**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| CONFEDERACIÓN HÍPICA OF PUERTO RICO INC.; MICHAEL MIRANDA; EDWIN TEXIDOR; RUBÉN FERNANDEZ; LUIS R. ORRACA;<br><br>PLAINTIFFS,<br><br>V.<br><br>TOTE MARITIME PUERTO RICO, LLC.; TOTE SERVICES, INC.; PORTUS STEVEDORING LLC; GUTMAN BOTHERS LTD.; HERMANOS RUIZ INC.; ANDRES RUIZ-ARIZMENDI; ABC INSURER; DOE LONGSHOREMAN; XYZ INSURER; JOHN DOE AND RICHARD ROE;<br><br>DEFENDANTS. | CIVIL NO.<br><br><br>ADMIRALTY<br>UNJUST ENRICHMENT<br>EXTRACONTRACTUAL DAMAGES |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiffs, CONFEDERACIÓN HÍPICA OF PUERTO RICO INC.; MICHAEL MIRANDA; EDWIN TEXIDOR; RUBÉN FERNANDEZ and LUIS R. ORRACA through the undersigning counsel, and respectfully state, allege and pray:

**I. JURISDICTION AND VENUE**

1. The present case involves a federal question action pursuant to the Admiralty and Maritime Jurisdiction of this Honorable Court under 28 U.S.C. § 1331 and §1333 within the meaning of Fed. R. Civ. P. 9(h).

2. Pursuant to 28 USC §1337, this District Court has original jurisdiction over any civil action or proceeding arising under maritime law, applicable to this case as it governs the

1

carriage of live animals during the period during which the lost cargo was "loaded on" and the period during which the goods were "discharged" from the ship.

3.   Venue is proper in this Court pursuant to 28 U.S.C § 1391(a) (2) and (b), as the incident in this case arises in the Port of Jacksonville and during the interstate navigable waters of the United States, during the ordinary marine shipping activity of a Vessel owned by defendant.

## II. PARTIES

4.   Plaintiff CONFEDERACIÓN HÍPICA OF PUERTO RICO INC. is a corporation created under the Laws of the Commonwealth of Puerto Rico with address at: PO Box 4464 CAROLINA, PUERTO RICO 00984; tel. (787) 876-3944, who is denominated as "owner of cargo" under applicable law.

5.   Co-Plaintiff MICHAEL MIRANDA is a natural person of legal age, married, with domicile at: Calle 5a At-19, Villas de Loiza, Canovanas, PR 00729, who is denominated as "owner of cargo" under applicable law.

6.   Co-Plaintiff EDWIN TEXIDOR is a natural person of legal age, married, with domicile at: Street 41, J-41, Villa de Loiza, Canovanas, P.R. 00729, denominated as "owner of cargo" under applicable law.

7.   Co-Plaintiff RUBÉN FERNANDEZ; is a natural person of legal age, single, with address at: PO Box 3645, Carolina, PR 00984; tel: (787)762-1042, denominated as "owner of cargo" under applicable law.

8.   Co-Plaintiff LUIS R. ORRACA is a natural person of legal age, single, with domicile at: PO Box 50191, Toa Baja, PR 00949, denominated as "owner of cargo" under applicable law.

9.   Co-Defendant, TOTE SERVICES, INC., is a corporation duly registered and authorized in the state of Florida with the following address: 10550 Deerwood Park Blvd., Suite 602, Jacksonville, FL 32256 and telephone number: (904) 248-4700; denominated as a "Carrier" under applicable law.

10. Defendant, TOTE MARITIME PUERTO RICO, LLC. ("TOTE") is a domestic for-profit company, organized under the laws of the Commonwealth of Puerto Rico, dedicated to the maritime transportation of cargo freight, with a designated local place of business in Caso Building, Suite 1206, #1225 Ponce de Leon Ave., San Juan, PR 00907;  denominated as a "Carrier" under applicable law.

11. Co-defendant PORTUS STEVEDORING LLC. is a Limited Liability Company registered in the State of Florida with address at: 5250 William Mills Street PO Box 28639 Jacksonville, FL 32226.

12. Co-defendant GUTMAN BOTHERS LTD. is a corporation registered in the state of Maryland with the following address: 6311 Greenspring Ave., Baltimore, MD, 21209, denominated as "Shipper" under applicable law.

13.  Co-Defendant, HERMANOS RUIZ, INC. is an active, domestic for-profit corporation, created under the laws of the Commonwealth of Puerto Rico, with address at: Carr. 459. Bo. Corales Km. 1, Aguadilla, PR 00605; Tel. 787-365-2770; denominated as a "consignee" and "booking agent" under applicable law.

14.  Co-Defendant, Andres Ruiz Arizmendi, is a natural person, of legal age, with address at: Carr. 413, Km. 5.3, Bo. Puntas Rincon, PR, 00677; PO BOX 395 Aguada, PR 00602; Tel. 787-365-2770.

15. Co-defendant, ABC Insurer, is an unknown liability insurer who had issued and maintained in full force and effect at all times relevant to the complaint, a liability insurance policy of in favor of the Carrier, TOTE, covering cargo losses as the one claimed in this Complaint.

16. Co-Defendant denominated ABC Insurance Company is an unknown insurance company duly organized and existing under the laws of the Commonwealth of Puerto Rico, that issued a policy of insurance covering the facts of this case on behalf of Defendants.

17. Co-Defendant denominated XYZ Insurance Company is an unknown insurance company duly organized and existing under the laws of the Commonwealth of Puerto Rico, that issued a policy of insurance covering the facts of this case on behalf of Defendants.

18.  Co-Defendants denominated John Doe and Richard Roe are unknown individuals or entities, who are also liable to Plaintiff.

### III. FACTS PERTAINING TO ALL PLAINTIFFS

19.  Plaintiffs are the real parties of interest in the instant action, as owners of the cargo that was lost and for which restitution and damages is hereby being claimed.

20. At all times material hereto, Co-Defendants, TOTE SERVICES, INC. and TOTE MARITIME PUERTO RICO, LLC. (hereinafter referred jointly as "TOTE), owned, conducted and/or operated a marine freight-transportation business and managed or operated a for-profit vessel for the purpose of transporting freight cargo containers through the interstate navigable waters from Jacksonville, Florida to San Juan, Puerto Rico.

21. Codefendants Hermanos Ruiz Inc. and its president Andres Ruiz-Arizmendi, were hired by Plaintiffs to act as a booking agent to coordinate with TOTE, the transportation by sea of a container of 15 racehorses belonging to Plaintiffs

22. During the month of May 2019, a bill of lading number SSL-000-666-886 (EXHIBIT 1) was issued for the transportation of a 40 feet container carrying Plaintiff's racehorses, to be shipped by ocean freight from Jacksonville, Florida to San Juan, Puerto Rico, on board of TOTE's vessel named "Perla del Caribe".

23. TOTE's shipment that carried Plaintiffs horses was a "port to port" movement, from the Port of Jacksonville to the Port of San Juan.

24. TOTE's motor vessel Perla del Caribe, that transported the container of horses, departed from the Port of Jacksonville FL on April 30th of 2019, and was supposed to arrive at the Port of San Juan on May 3rd, 2019.

25. The Bill of Lading SSL-000-666-886 designates Co-defendant GUTMAN BROTHERS LTD. as Shipper.

26. The Bill of Lading SSL-000-666-886 designates Co-defendant Hermanos Ruiz Inc. as Consignee.

27. The Bill of lading number SSL-000-666-886 includes the shipping of 3 different containers.

28. One of the containers, numbered STRU1000033 as described in Bill of lading contained 15 horses.

29. Plaintiffs are the owners of 8 of the 15 horses shipped in the container number STRU1000033 described in Bill of lading. The container number STRU1000033 had side-window-openings for air ventilation to the horses contained within.

30. The container number STRU1000033 transported by TOTE that contained Plaintiffs' horses is believed to be owned by Co-Defendants Hermanos Ruiz Inc., and Andres Ruiz-Arizmendi.

31.  The two other containers described in the Bill of lading (numbered STRU1000012 and STRU1000060), are portrayed on the Bill of lading as carrying "COWS".

32.  The two other containers described in the Bill of lading (numbered STRU1000012 and STRU1000060), carrying "COWS" were NOT at any time the property of Plaintiffs.

33.  At the time of the inclusion of the two other containers carrying COWS (numbered STRU1000012 and STRU1000060) that are part of the Bill of Lading SSL-000-666-886, Plaintiffs had no knowledge that the container that carried their horses was part of the same bill of lading that included other 2 containers of cows.

34. The Bill of Lading SSL-000-666-886 contains false information as to the real shipper of container number STRU1000033 carrying Plaintiff's racehorses.

35. GUTMAN BOTHERS LTD is not the real shipper nor the supplier of the racehorses owned by Plaintiffs that were shipped in container number STRU1000033.

36. Co-defendants, Hermanos Ruiz Inc. and Andres Ruiz, fraudulently designated a GUTMAN BOTHERS LTD on the Bill of Lading as the "shipper" of the container number STRU1000033 carrying Plaintiff's racehorses.

37.  TOTE knew that the named shipper "Gutman Brothers" on the Bill of Lading was not the real shipper and/or supplier of Plaintiff's racehorses because TOTE entered into a transportation contract with Hermanos Ruiz Inc. for the shipping of the container of Horses from Jacksonville to Puerto Rico.

38.  Codefendant GUTMAN BROTHERS is not a party nor signatory of the transportation contract between TOTE and Hermanos Ruiz Inc.

39. TOTE concealed the deception that GUTMAN BROTHERS was not the real shipper of the racehorses, to allow a more affordable tariff to Consignee Hermanos Ruiz Inc. by using GUTMAN BROTHER'S tariff to ship cows.

40.  The Bill of Lading SSL-000-666-886 is void and null, for it concealed a fraudulent collusion between the shipper GUTMAN BROTHERS, the carrier TOTE and the consignee HERMANOS RUIZ INC.

41. On or about April 30th, 2019, Codefendant Hermanos Ruiz Inc. made delivery to TOTE in Jacksonville Fl. of the container number STRU1000033, in good order and condition containing 15 healthy and live racehorses to be shipped to Puerto Rico.

42. By information and belief, at all times material hereto, Co-Defendants PORTUS STEVEDORING LLC. and/or an unknown entity denominated fictitiously "DOE LONGSHOREMAN", worked as terminal operator for Codefendant TOTE at the pier in Jacksonville FL. for loading cargo containers into TOTE's vessels.

43. By information and belief, Co-Defendants PORTUS STEVEDORING LLC. and/or an unknown entity denominated herein fictitiously "DOE LONGSHOREMAN", handled and

loaded all 3 containers in the Bill of Lading onto TOTE's Vessel Perla del Caribe, including the container number STRU1000033 carrying Plaintiff's racehorses.

44.   Codefendant PORTUS STEVEDORING LLC. and/or an unknown entity denominated herein fictitiously "DOE LONGSHOREMAN", handled and loaded the container of Plaintiff's horses onto the Vessel following the instructions and guidelines of TOTE and description on the Bill of Lading.

45.   Codefendant PORTUS STEVEDORING LLC. and/or an unknown entity denominated herein fictitiously "DOE LONGSHOREMAN", handled and loaded the container of Plaintiff's racehorses in the same manner as it would handle any other container, without any special instructions from TOTE.

46. When the container STRU1000033 with 15 horses arrived at the Port of San Juan, it was discovered that 7 of the horses that were transported had died during the voyage, and that 1 other horse had arrived to the Port in critical moribund condition.

47.   The container STRU1000033 of Plaintiffs' horses was released by TOTE upon arrival to San Juan Puerto Rico, to the named consignee on the Bill of Lading, Hermanos Ruiz Inc.

48. The one racehorse that arrived moribund in container STRU1000033 was then sacrificed at the Pier of San Juan.

49.   By information and belief, the one horse that arrived moribund to the Port of San Juan was named Tizk Tizk, and it is believed to have been illegally killed/sacrificed at the Pier under the control of Defendant TOTE.

50.   The racehorse that was sacrificed under TOTE's control at the Pier of San Juan, was an act taken without the authorization of its owner, Co-Plaintiff Michael Miranda.

51.  All of Plaintiffs' racehorses perished while the animals were in the control and possession of the Carrier TOTE.

52.  Plaintiffs' racehorses perished due to extreme stressful conditions and heat exhaustion inflicted upon the animals during the maritime voyage while inside the container STRU1000033.

53. Plaintiffs' racehorses perished due to Defendant TOTE's negligence and the negligence of its Jacksonville terminal operator, codefendant PORTUS STEVEDORING LLC. and/or the negligence of an unknown entity denominated fictitiously "DOE LONGSHOREMAN, when at the Jacksonville Port terminal loaded the container STRU1000033 of horses onto the Vessel Perla del Caribe, without concern of the horses wellbeing or their air ventilation.

54.  The Bill of Lading had no declared value for the cargo of animals. Plaintiffs' 8 death horses and its respective owners and values are as follows:

|   | Name of Horse | Owner/Plaintiff | Value |
|---|---|---|---|
| 1. | It's about time | Confederación Hípica de PR | $5,000.00 |
| 2. | Positive Thinking | Confederación Hípica de PR | $5,000.00 |
| 3. | Turbo Compressor | Confederación Hípica de PR | $10,000.00 |
| 4. | Adios Charlie | Confederación Hípica de PR | $6,000.00 |
| 5. | Tizk Tizk | Michael Miranda | $32,000.00 |
| 6. | Music Makes Sense | Edwin Texidor | $5,000.00 |
| 7. | Don Rincon | Ruben Fernandez | $13,500.00 |
| 8. | Twin Induction | Luis Orraca | $14,000.00 |
|   |   |   | $90,500.00    TOTAL |

55.  The consignee, Hermanos Ruiz Inc., whose whereabouts are unknown by Plaintiffs, did not deliver to Plaintiffs the dead corpses of the racehorses after arrival of the shipment.

56.  The consignee, Hermanos Ruiz Inc., whose whereabouts are unknown by Plaintiffs has not confronted Plaintiffs and has failed to make a claim to TOTE on behalf of Plaintiffs as Consignee for their lost cargo.

57.  Plaintiffs made several claims to TOTE and its attorneys for the loss of the horses transported, but TOTE refused to provide any information to Plaintiffs, despite many attempts, including failure to provide a copy of the Bill of Lading, thwarting any attempts by Plaintiffs to avail themselves and claim indemnification for their loss.

58.   TOTE denied payment of all the claims made by Plaintiffs for the loss of their animals.

59. TOTE finally provided a copy of the Bill of Lading to Plaintiffs on April 16, 2020, when Plaintiffs discovered that the named Shipper on the Bill of Lading was not their real supplier of horses.

### IV.  NEGLIGENCE & LIABILITY OF THE CARRIER AND OF ITS STEVEDORE, BREACH OF AFFREIGHTMENT CONTRACT AND IMPLIED WARRANTY OF CARGOWORTHINESS; and FRAUD AND MISSREPRESATIONS ON BILL OF LADING

60. The allegations contained in previous paragraphs are re-alleged and incorporated herein by reference.

61. TOTE is considered a Carrier under applicable maritime laws and transport regulations in the United States and Puerto Rico.

62. Under maritime law, Plaintiffs are the owners of goods that were transported by TOTE under Bill of Lading SSL-000-666-886.

63. TOTE breached the AFFREIGHTMENT CONTRACT AND IMPLIED WARRANTY OF CARGOWORTHINESS under Bill of Lading SSL-000-666-886.

64. TOTE breached the AFFREIGHTMENT CONTRACT AND IMPLIED WARRANTY OF CARGOWORTHINESS under Bill of Lading SSL-000-666-886.

65. On or about April 30th, 2019, Codefendant Hermanos Ruiz Inc. made delivery to TOTE in Jacksonville Fl. of a container STRU1000033 of racehorses belonging to Plaintiffs, being in good order and condition to be shipped under Bill of Lading SSL-000-666-886 to Puerto Rico.

66. PORTUS STEVEDORING LLC. and/or unknown entity denominated fictitiously "DOE LONGSHOREMAN" is a port terminal-operator or longshoreman for TOTE under maritime laws and transport regulations in the United States and Puerto Rico.

67. Defendant TOTE and its stevedore PORTUS STEVEDORING LLC. and/or unknown entity denominated fictitiously "DOE LONGSHOREMAN", negligently loaded and stacked the container of 15 horses in between other closed-containers on the vessel, inducing a closed-hot environment for the animals during the voyage and preventing proper air ventilation into the livestock container.  See **EXHIBIT 2**.

68. TOTE failed to warn and or instruct its stevedore and/or its longshoremen and/or loading crew at the Jacksonville Port to properly load and stack the container of horses aboard the vessel to promote air-ventilation for the animals through the container's windows.

69. TOTE's stevedore PORTUS STEVEDORING LLC. and/or unknown entity denominated fictitiously "DOE LONGSHOREMAN", failed to apply its own duty of care to preserve the cargo

of animals that handled for TOTE when stacked the container in between other containers that prevented air ventilation to the animals.

70. On May 3rd, 2019, after arrival to the Port of San Juan, a veterinarian from the Department of Agriculture of Puerto Rico named Alejandro E. Pérez Ramírez concluded that the horses that died during the voyage had perished due to extreme stressful conditions and heat exhaustion inside the container during the maritime voyage.

71. The extreme precarious conditions of heat inside the container of horses and the lack of air ventilation as blocked by other containers during the sea movement triggered the animals to become air-exhausted, fatigued, stressed and aggressive to each other.

72. Defendant Tote and its stevedore's failure to exercise a reasonable degree of care considering the circumstances of carrying live animals, resulted in the death of Plaintiffs' horses.

73. The death of 8 Plaintiffs' horses carried in the container aboard the vessel owned by TOTE, occurred while the container was in the possession, care, custody or control of the carrier TOTE.

74. Under the general maritime law of the United States, Defendants TOTE and its stevedore owed a duty of care, which they breached, to make sure the port-terminal operator at the Port of Jacksonville would properly handle, load and stack the container of horses owned by Plaintiff, to ensure the likelihood of survival of the animals during the voyage.

75. The Cargo of the racehorses that TOTE and its stevedore handled had an implied warranty of cargoworthiness, that the goods would be carried safely to their destination. Defendants breached the covenant of this warranty.

76.   Defendants were negligent by risking the lives of the horses during the voyage, knowing it was unseaworthy to improperly load and stack a container full of live horses, in the same manner that other inert cargo is handled, without the consideration to their wellbeing during the voyage.

77. TOTES's and its stevedore's negligent acts or omissions of improperly guiding the loading and stacking of the container of horses and/or lack of efforts to preserve the lives of the horses, constitutes a violation of accommodations regulations for the humane transport of livestock under 9 CFR § 91.12 .

78. TOTES's and its stevedore's negligent acts or omissions of improperly handling and stacking the container of horses to preserve the wellbeing of the livestock cargo, constitutes a violation of regulations for transporting livestock onto an ocean vessel under 9 CFR § 91.12.

79. TOTES and its stevedore failed to take reasonable measures to assure that the livestock of horses in the container was protected from injury and that they remained healthy during loading and sea-transport, which constitutes a violation of regulations for transporting livestock onto an ocean vessel under 9 CFR § 91.12 and to the Animal Health Protection Act, 7 U.S.C. §§ 8301–8322 (2002).

80. Defendant TOTE, negligently failed to comply with the rules and practice of general maritime law to exercise reasonable care under the circumstances, to instruct its stevedore to handle, load and stack the container of animals that belonged to Plaintiffs in a proper manner to safeguard the lives of the animals.

81. TOTE'S and its stevedore's negligent acts or omissions of improperly stacking and/or handling the container of "livestock" horses was in violation of federal regulations, which was the direct cause of the death of the horses and Plaintiffs' losses.

82. TOTE fraudulently allowed the designation of GUTMAN BOTHERS LTD on the Bill of Lading as the "shipper" of the container number STRU1000033 carrying Plaintiff's racehorses.

83. TOTE colluded with Consignee Hermanos Ruiz Inc. to accept and process for shipping a Bill of Lading that fraudulently designated GUTMAN BOTHERS LTD as the shipper on the Bill of lading, knowing it was not the real shipper of the racehorses.

84.    TOTE knew that the named shipper "Gutman Brothers" on the Bill of Lading was not the real shipper and/or supplier of Plaintiff's racehorses because TOTE entered into a transportation contract with Hermanos Ruiz Inc. for the shipping of the container of horses from Jacksonville to Puerto Rico, and Codefendant GUTMAN BROTHERS is not a party nor signatory of the transportation contract between TOTE and Hermanos Ruiz Inc.

85.  TOTE concealed the deception that GUTMAN BROTHERS was not the real shipper of the racehorses, to allow a more affordable tariff to Consignee Hermanos Ruiz Inc. by using GUTMAN BROTHER'S tariff to ship cows.

86. By colluding to designate a false shipper of horses on the Bill of Lading, TOTE prevented and or deterred that the real shipper and/or the owners of the container of horses could make a claim for any loss of the cargo under the Bill of Lading.

87.  Defendant TOTE, negligently failed to comply with the rules and practice of general maritime law by processing a Bill of Lading with a false shipper for the container of horses.

88. GUTMAN BOTHERS LTD did not make any claim to TOTE, as it did not suffer any loss of its cows being shipped also within the same Bill of Lading.

89. The Bill of Lading SSL-000-666-886 is void and null, for it concealed a fraudulent collusion between the shipper GUTMAN BROTHERS, the carrier TOTE and the consignee HERMANOS RUIZ INC.

90.   TOTE and its stevedore are jointly liable for breach of affreightment contract, for at least the value of the horses in the amount of $90,500.00, and/or damages applicable for negligence, fraud and misrepresentations on the Bill of lading, costs of transport, plus pre-judgment interest accrued and post-judgment legal interests under 28 U.S.C § 2861.

## V.  TORTIOUS AND FRAUDULENT ACTS OF NAMED SHIPPER AND CONSIGNEE

91. The allegations contained in previous paragraphs are re-alleged herein through incorporation by reference.

92. Pursuant to 28 U.S.C § 1333 and 28 U.S.C § 1367 (a), this Court has supplemental jurisdiction over state claims under Florida law for tortious acts.

93. Co-Defendants Hermanos Ruiz Inc., and Andres Ruiz, are liable to Plaintiffs for damages under Florida tort law.

94.  Co-defendants GUTMAN BOTHERS LTD. colluded with Hermanos Ruiz Inc. and Andres Ruiz to fraudulently designate GUTMAN BOTHERS LTD in the Bill of Lading as the "shipper" of the container number STRU1000033 carrying Plaintiff's racehorses.

95. Co-Defendants Hermanos Ruiz Inc., and Andres Ruiz, knew at the time of the issuance of the Bill of Lading that GUTMAN BOTHERS LTD is not the real shipper nor the supplier of the racehorses owned by Plaintiffs, and represented this to TOTE.

96. Co-Defendants Hermanos Ruiz Inc., Andres Ruiz and Gutman Brothers colluded with carrier TOTE to process Bill of Lading SSL-000-666-886 containing false information as to the real shipper of container number STRU1000033 carrying Plaintiff's racehorses.

97. By information and belief, co-defendants, Hermanos Ruiz Inc. and Andres Ruiz, fraudulently designated GUTMAN BOTHERS LTD in the Bill of Lading as the "shipper" of the container number STRU1000033 carrying Plaintiff's racehorses in order to collide with TOTE for a more affordable tariff to ship animals.

98. Co-defendants, Hermanos Ruiz Inc. and Andres Ruiz, fraudulently designated GUTMAN BOTHERS LTD in the Bill of Lading as the "shipper" of the container number STRU1000033 carrying Plaintiff's racehorses in order to ship and handle the racehorses under the same tariff of COWS.

99. The booking agent and consignee, Hermanos Ruiz Inc., failed to provide copy of the Bill of Lading to Plaintiffs as owners to the racehorses Cargo that was lost.

100.    Co-Defendants Hermanos Ruiz Inc., Andres Ruiz and Gutman Brothers colluded to conceal the Bill of Lading from Plaintiffs and hide the fact that the named shipper on the Bill of Lading was not the real shipper or supplier of horses.

101.

102.    By fraudulently designating GUTMAN BOTHERS LTD as the shipper on the Bill of lading, Hermanos Ruiz Inc. prevented that the real shipper and/or Plaintiffs as owners of the cargo, could make a claim to TOTE for the dead horses.

103.    The booking agent, Hermanos Ruiz Inc., had a duty to ship and receive Plaintiff's racehorses through TOTE's maritime services and to make sure that in case of any cargo loss, a claim on behalf of Plaintiffs, as owners of the Cargo, it would be made to TOTE.

104.    The booking agent and consignee, Hermanos Ruiz Inc., failed to deliver the dead horses to Plaintiffs after container number STRU1000033 was released by TOTE to them.

105.    The booking agent and consignee, Hermanos Ruiz Inc., failed to make a claim to TOTE as consignee of the Cargo of horses for the dead of the animals.

106.    The booking agent and consignee, Hermanos Ruiz Inc., failed to request the false shipper GUTMAN BROTHERS, to make a claim on behalf of Plaintiffs for the dead horses.

107.     The booking agent, Hermanos Ruiz Inc., whose whereabouts are unknown, have avoided Plaintiffs, and breached their duty as booking agent and Consignee to avail the rights of the owners of the cargo to make a claim.

108.    Co-Defendants Hermanos Ruiz Inc., and Andres Ruiz, as booking agent, Consignee, attorneys-in-fact of the owners of cargo, are liable to Plaintiffs for their failure to fulfill their duties and for their negligent and fraudulent acts and omissions.

109.     By information and belief, Hermanos Ruiz Inc. picked up the dead horses from TOTE at the Pier of San Juan, and disposed them or buried them in an unknown location.

110.    All acts of disposing the dead animals were without any consent of the Plaintiffs-owners.

111.    For the negligent acts and omissions, fraudulent concealment and collusion with TOTE, co-defendants Hermanos Ruiz Inc., and Andres Ruiz and Gutman Brothers, are

jointly and severally liable, in solido, in a sum not less than $100,000.00 in damages, including the damages caused to Plaintiffs for lost income and impairment to generate income from the races of the Thoroughbreds.

### VI.  TOTE'S TEMERITY FOR REFUSING TO PROVIDE THE SHIPMENT'S DOCUMENTATION AND OBSTRUCT A CLAIM

112.    Plaintiffs have a right, as owners of the horses that died during the cargo transportation, to assert a claim to TOTE as the carrier of the cargo.

113.    Due to the booking agent's omissions and lack of endeavors on behalf of Plaintiffs, on September 20th, 2019 Plaintiffs attorney met directly with TOTE's attorneys to make a Notice of Claim for the dead of the horses, and also requested from TOTE copies of all pertinent documentation regarding the shipment in order to forward a Claim directly to TOTE. However, TOTE refused to provide copy of the Bill of Lading or any other documentation such as the 'Transportation Services Agreement'.

114.    On September 25, 2019, Plaintiffs submitted another written request to TOTE's attorneys, asking for the documentation regarding the shipment, but TOTE again refused and neglected to provide any documentation to Plaintiffs.

115.    On September 30, 2019, Plaintiffs sent to TOTE another request for the documentation of the shipment of the dead horses, and submitted copies of the "Certificates of Foal Registration" issued by The Jockey Club Registry (breed registry for Thoroughbred horses in the United States), to show ownership of the horses that died in the cargo shipment.

116.    Plaintiffs also provided TOTE several Sworn Affidavits asserting titleship of the horses that died in the cargo shipment.

117.     TOTE refused to provide to Plaintiffs the documentation and Bill of Lading of the lost cargo, despite many attempts made to obtain the documentation.

118.     TOTE intentionally created an impediment to Plaintiffs, when obstructed the right to make a claim by neglecting to provide copy of the Bill of Lading for the lost cargo of horses.

119.     On Nov. 20, 2019, Plaintiffs attorney wrote again to TOTE's attorneys on behalf of co-plaintiff Mr. Ruben A. Fernandez as one of the owners of a dead horse that was part of the cargo aboard TOTES's vessel. In such communication to TOTE, Plaintiff requested again the pertinent documentation and copy of bill of lading.  The request was supported by the certificate of titleship and an affidavit of ownership by Co-Plaintiff Ruben Fernandez.

120.     On Dec. 6th, 2019, TOTE's attorneys responded to Plaintiffs letter of Nov. 20-2019 and still refused to provide any documentation to Plaintiffs regarding the shipment of the dead horses.

121.     On Dec. 26, 2019, Plaintiffs attorney wrote again to TOTE's attorneys on behalf of co-plaintiff Mr. Ruben A. Fernandez. In such notice, Plaintiff expressed to TOTE that its refusal and neglect to provide copy of the Bill of Lading and pertinent documents to Plaintiff, constituted an intentional act to deter and obstruct his right to assert and make a sustained claim to TOTE for the cargo loss.

122.     Despite the lack of documentation, on March 19, 2020 Plaintiffs filed a claim directly with the carrier TOTE through its website's platform, the Claims that were previously notified to TOTE's Attorneys, totaling 8 dead horses, sustained with affidavits

asserting ownership, values of each of the dead horses, and copies of the Certificates of Foal Registration of the Horses.

123.     The refusal and neglect by TOTE to timely provide Plaintiffs a copy of the Bill of Lading of the transport at issue constitutes an obstruction and a bath faith intentional attempt by TOTE to prevent Plaintiffs from asserting the Claims to TOTE and/or promote any statute of limitations.

124.     On April 1st, 2020, still refusing to provide to Plaintiffs a copy of the Bill of Lading, or any documentation to sustain their response, TOTE again denied all the Claims previously submitted by Plaintiffs, through a communication by its attorneys, stating that, based on the Bill of Lading (which at the time had not been provided to Plaintiffs), "*Tote reaffirmed denial of all the claims*".

125.     TOTE'S notification of the denial of the Claims dated April 1st, 2020, failed to include copy of the Bill of Lading or any documentation in support of the denial.

126.     Due to TOTE's arbitrary and unsupported denial of Plaintiffs' Claims, and due to its neglect and refusal to cooperate and/or provide to Plaintiffs a copy of the Bill of Lading, and/or all other information related to the fraudulent shipper on the Bill of lading, Plaintiffs are obligated to file the instant judicial Complaint for fraud, bad faith and misrepresentations.

127.     TOTE finally released to Plaintiffs a copy of the Bill of Lading on April 16, 2020.

128.     TOTE's intentional disdain to timely provide the pertinent documentation to Plaintiffs as the Owners of the Cargo and prevent and intentionally avoid a claim for the loss, constitutes bad faith, obstinacy and temerity.

129.     In addition to the restitution of the value of the horses and other damages for fraud, TOTE is judicially responsible to indemnify Plaintiffs for its bad faith, obstinacy and temerity.

## VII.  JURY DEMAND

130.     Plaintiff demands a trial by jury for those triable issues under state law other than admiralty causes of action under a bench trial.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that judgment be entered in their favor as follows:

a) against TOTE SERVICES, INC. and TOTE MARITIME PUERTO RICO, LLC. and PORTUS STEVEDORING LLC, for breach of affreightment contract awarding a restitution to Plaintiffs in an amount no less than $90,500.00 for the value of the dead horses, damages applicable for fraud and misrepresentations in an amount no less than $100,000.00, pre-judgment interest from the time the claim accrued until judgment is entered, costs incurred and post-judgment interest;

b) Against codefendant Hermanos Ruiz Inc. and Gutman Brothers LTD, as jointly and severally liable for the damages caused pursuant to state law; costs incurred and reasonable attorney fees.

c) any other relief as the Court deems appropriate.

April 30, 2020                          Respectfully submitted,
Miami, Florida

By:   */s/Michael C. Black*

**Michael C. Black, Esquire**
Florida Bar No. 056162
mblack@marlaw.com
**Michael M. Ricobaldi, Esquire**
Florida Bar No. 1018134
mricobaldi@marlaw.com
**MICHAEL C. BLACK, P.A.**
7700 North Kendall Drive, Suite 305
Miami, Florida 33156
Telephone:     (305) 271-8301
Facsimile:     (305) 271-8302
*Attorneys for Plaintiffs*