IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **CONFEDERACIÓN HÍPICA DE PUERTO RICO INC.; MICHAEL MIRANDA; EDWIN TEXIDOR; RUBÉN FERNANDEZ; LUIS R. ORRACA;** PLAINTIFFS, v. **TOTE MARITIME PUERTO RICO, LLC.; PORTUS STEVEDORING LLC; GUTMAN BROTHERS LTD.; HERMANOS RUIZ, INC.; ANDRES RUIZ-ARIZMENDI** DEFENDANTS | CIVIL NO. **3:20-CV-00448** ADMIRALTY DAMAGES |

**AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiffs, CONFEDERACIÓN HÍPICA DE PUERTO RICO INC.; MICHAEL MIRANDA; EDWIN TEXIDOR; RUBÉN FERNANDEZ and LUIS R. ORRACA, by and through their undersigned counsel, respectfully state, allege and pray:

**I. JURISDICTION AND VENUE**

1. The present case involves a federal question action pursuant to the Admiralty and Maritime Jurisdiction of this Honorable Court under 28 U.S.C. § 1331 and §1333 within the meaning of Fed. R. Civ. P. 9(h).

2. Pursuant to 28 USC §1337, this District Court has original jurisdiction over any civil action or proceeding arising under maritime law, including the Hamburg Rules of the United Nations Convention on the Carriage of Goods by Sea 1978, applicable to this case as it governs the carriage of live animals during the period during which the cargo was "loaded on" and the period after the goods are "discharged" from the ship.

1

3. Venue is proper in this Court pursuant to 28 U.S.C § 1391(a) (2) and (b), as the incident in this case arises in the Port of Jacksonville and during the interstate navigable waters of the United States, during the ordinary marine shipping activity of a Vessel owned by defendant.

## II. PARTIES

4. Co-Plaintiff, CONFEDERACIÓN HÍPICA DE PUERTO RICO INC., is a corporation created under the Laws of the Commonwealth of Puerto Rico with address at: PO Box 4464 CAROLINA, PUERTO RICO 00984; who is denominated as "owner of cargo" under applicable law.

5. Co-Plaintiff, MICHAEL MIRANDA, is a natural person of legal age, married, with domicile at: Calle 5a At-19, Villas de Loiza, Canovanas, PR 00729, who is denominated as "owner of cargo" under applicable law.

6. Co-Plaintiff EDWIN TEXIDOR is a natural person of legal age, married, with domicile at: Street 41, J-41, Villa de Loiza, Canovanas, P.R. 00729, denominated as "owner of cargo" under applicable law.

7. Co-Plaintiff RUBÉN FERNANDEZ; is a natural person of legal age, single, with address at: PO Box 3645, Carolina, PR 00984; denominated as "owner of cargo" under applicable law.

8. Co-Plaintiff LUIS R. ORRACA is a natural person of legal age, single, with domicile at: PO Box 50191, Toa Baja, PR 00949, denominated as "owner of cargo" under applicable law.

9. Co-defendant, TOTE MARITIME PUERTO RICO, LLC. ("TOTE") is a foreign limited liability company, organized under the laws of the State of Delaware, dedicated to the maritime transportation of cargo freight, with its principal place of business in Jacksonville, Florida; denominated as a "Carrier" under applicable law.

10. Co-defendant PORTUS STEVEDORING LLC. is a Limited Liability Company registered in the State of Florida with its principal place of business in Jacksonville, Florida.

11. Co-defendant GUTMAN BROTHERS LTD. is a corporation registered in the state of Maryland with the following address: 6311 Greenspring Ave., Baltimore, MD, 21209.

12. Co-Defendant, HERMANOS RUIZ, INC. is an active, for-profit corporation, created under the laws of the Commonwealth of Puerto Rico, with address at: Carr. 459. Bo. Corales Km. 1, Aguadilla, PR 00605; denominated as a "consignee" and "booking agent" under applicable law.

13. Co-Defendant, ANDRES RUIZ-ARIZMENDI, is a natural person, of legal age, with address at: Carr. 413, Km. 5.3, Bo. Puntas Rincon, PR, 00677; PO BOX 395 Aguada, PR 00602.

### III. FACTS COMMONLY RELATED TO ALL DEFENDANTS

14. On or about April 30, 2019, Plaintiffs hired codefendants HERMANOS RUIZ, INC. and its president ANDRES RUIZ-ARIZMENDI, to act as booking agent to coordinate the shipping from Florida to Puerto Rico of 15 racehorses belonging to Plaintiffs.

15. Codefendants HERMANOS RUIZ, INC. through its president ANDRES RUIZ-ARIZMENDI, contracted with codefendant TOTE for the ocean freight transportation of Plaintiffs' 15 horses, from the Port of Jacksonville FL to the Port of San Juan Puerto Rico.

16. On or about April 30, 2019, codefendants HERMANOS RUIZ, INC. and its president ANDRES RUIZ-ARIZMENDI, prepared a Bill of Lading number SSL-000-666-886 and submitted it to TOTE for the shipping of Plaintiffs' horses by ocean freight from Jacksonville, Florida to San Juan, Puerto Rico. *See Bill of Lading attached hereto as Exhibit 1.*

17. The Bill of Lading prepared by HERMANOS RUIZ, INC. had no declared value for the cargo of the animals.

18. Codefendant HERMANOS RUIZ, INC. named GUTMAN BROTHERS LTD, on the Bill of Lading as the "shipper" of plaintiffs' horses.

19. Codefendant GUTMAN BROTHERS LTD is not the real shipper nor the supplier of the racehorses owned by Plaintiffs.

3

20. At all times relevant to the facts of this Complaint, Plaintiffs were NOT aware, nor had any knowledge, that codefendant GUTMAN BROTHERS LTD, had been designated on the Bill of Lading as the "shipper" of their racehorses.

21. Codefendant HERMANOS RUIZ, INC. named itself as "consignee" of the cargo on the Bill of Lading.

22. The Bill of lading number SSL-000-666-886 portrayed 3 different containers as the cargo being shipped.

23. Codefendants HERMANOS RUIZ, INC. and its president ANDRES RUIZ-ARIZMENDI included on the Bill of Lading, a 40 foot container numbered STRU1000033 containing Plaintiff's 15 racehorses, as well as two other containers (numbered STRU1000012 and STRU1000060), portrayed to carry "COWS", to be shipped together with the container of plaintiffs' horses aboard TOTE's vessel.

24. The cargo of COWS in two other containers described in the Bill of lading (numbered STRU1000012 and STRU1000060), were NOT at any time, property of Plaintiffs.

25. Plaintiffs do not know who the real owner of the COWS is that were transported in the two other containers (numbered STRU1000012 and STRU1000060) within the Bill of Lading.

26. Plaintiffs at all times had no knowledge that the Bill of Lading being used to ship the container of their racehorses also included an additional cargo of 2 other containers of COWS (numbered STRU1000012 and STRU1000060).

27. On or about April 30, 2019, Codefendant HERMANOS RUIZ, INC. made delivery to TOTE in the port of Jacksonville Fl. of the 40-foot container numbered STRU1000033 containing plaintiffs' racehorses, to be loaded onto TOTE's vessel and shipped to San Juan, Puerto Rico.

28. When codefendant HERMANOS RUIZ, INC. delivered to TOTE the container number STRU1000033 with 15 racehorses inside, the animals were alive, healthy and in good order and condition.

29. Upon information and belief, Codefendant PORTUS STEVEDORING LLC., was the stevedore hired by TOTE to load and stack container number STRU1000033 of Plaintiffs' horses, onto TOTE's vessel named "Perla del Caribe".

30. By information or belief, Codefendant HERMANOS RUIZ, INC. also made delivery to TOTE in the Port of Jacksonville of the two other containers (numbered STRU1000012 and STRU1000060) described in the Bill of lading as carrying "COWS".

31. On or about April 30th of 2019, TOTE's vessel "Perla del Caribe" departed from the Port of Jacksonville carrying container number STRU1000033 containing 15 racehorses belonging to Plaintiffs, destined to arrive at the Port of San Juan on May 3rd, 2019.

32. By information or belief, when TOTE's vessel departed from the Port of Jacksonville, it also carried onboard the two other containers (numbered STRU1000012 and STRU1000060) described on the Bill of lading as carrying "COWS".

33. On or about May 3, 2019, the container STRU1000033 of Plaintiffs' horses arrived at the Port in San Juan, Puerto Rico, was discharged from the vessel, and released by TOTE to the named consignee on the Bill of Lading, HERMANOS RUIZ, INC.

34. When the container was released, it was discovered by Codefendant HERMANOS RUIZ, INC. that seven (7) of the horses that were transported aboard TOTE's vessel had died during the voyage and that one other horse had arrived in critical moribund condition.

35. Shortly thereafter, a veterinarian from the Department of Agriculture of Puerto Rico named Alejandro E. Pérez Ramírez concluded that the horses that died during the voyage had

perished due to extreme stressful conditions and heat exhaustion inside the container during the ocean voyage.

36. Upon information and belief, the horse that arrived in critical moribund condition from the voyage, was euthanized at the Pier of San Juan.

37. The deaths of the racehorses constitute a tragic loss that created damages to Plaintiffs, for which all Defendants are contributorily responsible and liable.

38. Plaintiffs' eight (8) horses that died are identified below with their respective owners and purchase prices:

|    | Name of Horse     | Owner/Plaintiff            | Value              |
|----|-------------------|----------------------------|--------------------|
| 1. | It's about time   | Confederación Hípica de PR | $5,000.00          |
| 2. | Positive Thinking | Confederación Hípica de PR | $5,000.00          |
| 3. | Turbo Compressor  | Confederación Hípica de PR | $10,000.00         |
| 4. | Adios Charlie     | Confederación Hípica de PR | $6,000.00          |
| 5. | Tizk Tizk         | Michael Miranda            | $32,000.00         |
| 6. | Music Makes Sense | Edwin Texidor              | $5,000.00          |
| 7. | Don Rincon        | Ruben Fernandez            | $13,500.00         |
| 8. | Twin Induction    | Luis Orraca                | $16,000.00         |
|    |                   |                            | $92,500.00   TOTAL |

## IV.  CAUSES OF ACTION AGAINST DEFENDANTS

### (COUNT 1)
### FRAUD BY CARRIER TOTE

39. The allegations no. 14 to 38 contained in the previous paragraphs are re-alleged and incorporated herein by reference.

6

40. Co-defendants, HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI, fraudulently designated a cattle seller named GUTMAN BROTHERS LTD on the Bill of Lading as the "shipper" of the container number STRU1000033 carrying Plaintiff's racehorses.

41. Codefendant GUTMAN BROTHERS LTD is not the real shipper nor the supplier of the racehorses owned by Plaintiffs.

42. TOTE knew that the named shipper on the Bill of Lading SSL-000-666-886, "GUTMAN BROTHERS LTD", was not the real shipper of Plaintiff's racehorses.

43. At all times relevant to the facts of this Complaint, Plaintiffs were NOT aware, nor had any knowledge, that codefendant GUTMAN BROTHERS LTD, had been designated on the Bill of Lading as the "shipper" of their racehorses.

44. When TOTE accepted and processed the Bill of lading from codefendant HERMANOS RUIZ, INC., TOTE knew that it contained false information as to the named shipper of container number STRU1000033 because TOTE had an agreement with HERMANOS RUIZ, INC. for the transportation of cows from the same named shipper.

45. TOTE concealed the deceit on the Bill of Lading that GUTMAN BROTHERS was not the real shipper of the racehorses, presumptively to extend to HERMANOS RUIZ, INC. an affordable shipping price using GUTMAN BROTHER'S published tariff for cattle shipping.

46. By accepting the designation of GUTMAN BROTHERS LTD as a false shipper on the Bill of lading, TOTE prevented that in the event of a cargo loss, the real shipper could make a claim for the dead horses.

47. It was foreseeable by TOTE that by accepting a Bill of lading with a false shipper, in the event of a claim for a lost cargo, the real shipper would be prevented from making a claim.

7

48. The Bill of Lading SSL-000-666-886 is void and null, for it was contracted under false information, through a fraudulent scheme between TOTE and HERMANOS RUIZ, INC. in detriment of the real shipper and in harm to the owners of the cargo.

49. As a result of the fraud, Plaintiffs have been damaged in an amount in excess of $92,500.

**(Count 2)**
**FRAUD BY BOOKING AGENTS HERMANOS RUIZ, INC. AND ANDRES RUIZ-ARIZMENDI**

50. The allegations no. 14 to 38 contained in the previous paragraphs are re-alleged and incorporated herein by reference.

51. Pursuant to 28 U.S.C § 1333 and 28 U.S.C § 1367 (a), this Court has supplemental jurisdiction over state claims under Florida law against codefendants HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI.

52. HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI, as the booking agents for the shipment of horses, intentionally misrepresented to the Plaintiffs that they would list the Plaintiffs as the "shipper" on the shipment's respective Bill of Lading, as would be expected in the normal course of business.

53. HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI intended that the Plaintiffs would rely on their misrepresentation because otherwise the Plaintiffs would not agree to shipping their horses under an incorrect Bill of Lading listing a third party as the shipper and owner of the horses.

54. Plaintiffs' did in fact rely on HERMANOS RUIZ, INC.'S and ANDRES RUIZ-ARIZMENDI's misrepresentation of material fact because not only were the Plaintiffs the in-fact shippers of the horses, but being listed as the "shipper" on the Bill of Lading would ensure that if anything occurred, Plaintiffs would be able to make a claim for damages and could avail their rights as the proper owners of the cargo.

55. Co-defendants, HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI, fraudulently designated GUTMAN BROTHERS LTD on the Bill of Lading as the "shipper" of the container number STRU1000033 carrying Plaintiff's racehorses.

56. GUTMAN BROTHERS LTD is not the real shipper nor the supplier of the racehorses owned by Plaintiffs.

57. Co-defendants, HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI, fraudulently designated GUTMAN BROTHERS LTD as the "shipper" on the Bill of Lading in order to ship the racehorses for a less expensive cost using a tariff of COWS published by TOTE.

58. By fraudulently designating GUTMAN BROTHERS LTD as the shipper on the Bill of lading, HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI prevented that the real shipper could make a claim for the dead horses and that Plaintiffs could avail their rights as owners of the cargo.

59. As a result of Plaintiffs' reliance on HERMANOS RUIZ, INC.'s and ANDRES RUIZ-ARIZMENDI's fraudulent misrepresentation, Plaintiff was prevented from making a claim to TOTE for the death of the horses.

60. HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI is liable to Plaintiffs for the damages herein claimed due to their fraudulent act of issuing a Bill of Lading to TOTE naming a false shipper on the document.

61. HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI intentionally failed to declare a value on the Bill of Lading for Plaintiff's cargo of animals.

62. For their fraudulent acts, HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI are jointly and severally liable to Plaintiffs for damages in excess of $92,500.

**(COUNT 3)**
**NEGLIGENCE OF THE CARRIER TOTE**

63. The allegations no. 14 to 38 contained in the previous paragraphs are re-alleged and incorporated herein by reference.

64. TOTE is considered a Carrier under applicable maritime laws and transport regulations in the United States and Puerto Rico.

65. Under maritime law, Plaintiffs are the owners of goods that were transported by the Carrier TOTE under Bill of Lading SSL-000-666-886.

66. At all times material hereto, Defendants TOTE, owned, conducted and/or operated a marine freight-transportation business and managed or operated a for-profit vessel for the purpose of transporting freight cargo containers through the interstate navigable waters from Jacksonville, Florida to San Juan, Puerto Rico.

67. TOTE had a duty to warn, instruct and supervise its stevedore and/or its crew at the Jacksonville Port, to properly load and stack the container of horses on TOTE'S vessel in a manner sufficient to allow air ventilation into the container for the animals.

68. TOTE breached its duty and was negligent by failing to warn, instruct, supervise, properly load, and by failing to take proper measures to direct its terminal operator/stevedore and/or crew to avoid blocking the windows of the container of horses with other containers, and failed to implement instructions to the terminal operator/stevedore to stack an animal's container in a manner that would allow air ventilation to preserve their lives aboard its vessel.

69. Defendant TOTE, further failed to comply with the rules and practice of general maritime law to exercise reasonable care under the circumstances, to instruct its stevedore to handle, load and stack the container of animals that belonged to Plaintiffs in a proper manner to permit flow of air into the animal's container in order to safeguard the lives.

70. TOTE was further negligent by risking the lives of the horses during the voyage, knowing it was unseaworthy to transport the horses after improperly loading and stacking the container as if it was any other container of inert cargo, blocking the flow of air without the consideration to the wellbeing of the animals during the voyage.

71. TOTE'S negligent acts or omissions of improperly stacking and/or handling the container of "livestock" horses onto its vessel was in violation of marine cargo regulations, which was the direct cause of the death of the horses.

72. TOTE's tortious acts and omissions and/or neglect in handling and stacking the container of horses to preserve the wellbeing of the livestock cargo constitutes a violation of regulations for transporting livestock onto an ocean vessel under 9 CFR § 91.12.

73. TOTE'S contributory tortious acts and omissions and/or neglect to take reasonable measures to assure that the livestock of horses in the container was protected from injury and that they remained healthy during loading and sea-transport, constitutes a violation to the Animal Health Protection Act, 7 U.S.C. §§ 8301–8322 (2002).

74. By information and belief, the one horse that arrived moribund to the Port of San Juan was named Tizk Tizk, and it is believed to have been illegally euthanized at the Pier under the control of Defendant TOTE, without the authorization of its owner, Co-Plaintiff Michael Miranda.

75. For the acts that constitute negligence and negligence per se due to violations to regulations for transport of livestock and cruelty to animals, TOTE is jointly and severally liable to Plaintiffs for the loss of the horses in an amount in excess of $92,000.

**(COUNT 4)**
**BREACH OF CONTRACT BY THE CARRIER TOTE**

76. The allegations no. 14 to 38 contained in the previous paragraphs are re-alleged and incorporated herein by reference.

11

77. TOTE contracted to transport and deliver the 15 horses by ocean from Jacksonville to Puerto Rico in the same good order and condition as they were received. Plaintiffs, as actual owners of the horses, are intended third party beneficiaries of said contract.

78. TOTE received the 15 horses in good health and sound condition in Jacksonville as evidenced by the issuance of the clean bill of lading. *See* Bill of Lading SSL-000-666-886 attached hereto as *Exhibit 1.*

79. TOTE breached the affreightment contract by delivering eight (8) of the horses in critical or deceased condition at destination in Puerto Rico.

80. Due to their breach of affreightment contract, TOTE is liable to Plaintiffs for the loss of the horses in excess of $92,500.

**(COUNT 5)**
**NEGLIGENCE OF PORTUS STEVEDORING LLC.**

81. The allegations no. 14 to 38 contained in the previous paragraphs are re-alleged and incorporated herein by reference.

82. Codefendant PORTUS STEVEDORING LLC. is a port terminal-operator and/or stevedoring company, that was hired by codefendant TOTE to load containers onto its vessels.

83. By information and belief, Co-Defendant PORTUS STEVEDORING LLC., handled and loaded onto TOTE's Vessel "Perla del Caribe" the container number STRU1000033 carrying Plaintiff's racehorses.

84. PORTUS STEVEDORING LLC. had the duty to exercise reasonable care in handling and loading the subject container of racehorses.

85. PORTUS STEVEDORING LLC., breached its duty when it loaded and stacked the container of racehorses onto the vessel Perla del Caribe, placing it in between other closed-containers, inducing a closed-hot environment for the animals during the voyage and preventing proper air ventilation through the container's windows.  *See EXHIBIT 2.*

86. The extreme precarious conditions of heat inside the container of horses and the lack of air ventilation being blocked by other containers during the voyage, triggered the animals to become air-exhausted, fatigued, stressed and aggressive to each other.

87. PORTUS STEVEDORING LLC.'s failure to exercise a reasonable degree of care considering the circumstances of carrying live animals, resulted in the death of Plaintiffs' horses, for which said codefendant is jointly and severally liable to Plaintiffs in an amount in excess of $92,500.

**(Count 6)**
**BREACH OF CONTRACT BY HERMANOS RUIZ, INC.**

88. The allegations no. 14 to 40 contained in the previous paragraphs are re-alleged and incorporated herein by reference.

89. Pursuant to 28 U.S.C § 1333 and 28 U.S.C § 1367 (a), this Court has supplemental jurisdiction over state claims under Florida State law against codefendant HERMANOS RUIZ, INC.

90. HERMANOS RUIZ, INC. contracted on behalf of Plaintiffs to coordinate the shipping of Plaintiff's racehorses through TOTE, to deliver them upon arrival, and to make sure that in case of any cargo loss, a claim on behalf of Plaintiffs, as owners of the Cargo, would be made to TOTE.

91. Co-defendant HERMANOS RUIZ, INC. breached its contract as booking agent for Plaintiffs' horses.

92. Co-defendant HERMANOS RUIZ, INC. failed to deliver the corpses of the dead horses to Plaintiffs after arrival of the container to the Port of San Juan.

93. Co-defendant HERMANOS RUIZ, INC. picked up the dead horses at the Pier of San Juan, and disposed them or buried them in an unknown location without the consent of Plaintiffs.

94. Co-defendant HERMANOS RUIZ, INC. failed to provide copy of the Bill of Lading to Plaintiffs as owners of the Cargo of animals that died.

95. Co-defendant HERMANOS RUIZ, INC. failed to make a claim to TOTE for the death of the horses as consignee of the Cargo or on behalf of Plaintiffs.

96. Co-defendant HERMANOS RUIZ, INC. failed to request the shipper to make a claim for the death of the racehorses.

97. Co-defendant HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI, whose whereabouts are unknown, have vanished, have not communicated with Plaintiffs, have avoided Plaintiffs, and have breached their duty as booking agent and Consignee to avail the rights of Plaintiffs as the owners of the live animals cargo.

98. Co-Defendant HERMANOS RUIZ, INC., as booking agent, Consignee, attorneys-in-fact of the owners of cargo, are jointly and severally liable to Plaintiffs for breach of contract in an amount in excess of $92,500.

## (COUNT 7)
## FRAUD BY GUTMAN BROTHERS LTD

99. The allegations no. 14 to 40 contained in the previous paragraphs are re-alleged and incorporated herein by reference.

100. Pursuant to 28 U.S.C § 1333 and 28 U.S.C § 1367 (a), this Court has supplemental jurisdiction over state claims under Florida law against codefendant GUTMAN BROTHERS LTD.

101. Co-defendant, GUTMAN BROTHERS LTD, fraudulently colluded with HERMANOS RUIZ, INC Inc to fraudulently designate itself on the Bill of Lading as the "shipper" of the container number STRU1000033 carrying Plaintiff's racehorses.

102. GUTMAN BROTHERS LTD is not the real shipper nor the supplier of the racehorses owned by Plaintiffs.

103. Co-defendant GUTMAN BROTHERS LTD fraudulently colluded with HERMANOS RUIZ, INC. to designate itself as the "shipper" on the Bill of Lading in order to allow HERMANOS

RUIZ, INC to pay TOTE for the shipping of the horses under the same tariff of COWS published for GUTMAN BROTHERS LTD by TOTE.

104. By fraudulently colluding with HERMANOS RUIZ, INC to falsely identify itself on the Bill of lading as the shipper of horses, GUTMAN BROTHERS LTD prevented Plaintiffs, the real shipper, to make a claim for the dead horses and that Plaintiffs could avail their rights as owners of the cargo.

105. GUTMAN BROTHERS LTD is liable to Plaintiffs for the damages herein claimed due to their fraudulent act of colluding to issue a Bill of Lading to TOTE naming itself falsely as the shipper of the racehorses.

106. GUTMAN BROTHERS LTD colluded with HERMANOS RUIZ, INC. and ANDRES RUIZ-ARIZMENDI to intentionally not declare a value on the Bill of Lading for Plaintiff's cargo of horses.

107. For their fraudulent acts, GUTMAN BROTHERS LTD are jointly and severally liable to Plaintiffs in an amount in excess of $92,500.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that the Honorable Court enters judgment accordingly in favor of Plaintiffs as follows:

a) Finding TOTE MARITIME PUERTO RICO, LLC. and PORTUS STEVEDORING LLC, jointly and severally responsible pursuant to the Counts against them under admiralty law, awarding damages to Plaintiffs based on the market value of the death horses or restitution in an amount no less than $92,500.00 for the purchase prices of the dead horses; plus any damages applicable under state law for the counts of fraud and negligence in an amount no less than $100,000.00, pre-judgment interest from the

    time the claim accrued until judgment is entered, costs incurred, attorney's fees, and post-judgment interest;

b) Finding codefendants HERMANOS RUIZ, INC., ANDRES RUIZ-ARIZMENDI, and GUTMAN BROTHERS LTD, jointly and severally liable for the damages caused to Plaintiffs pursuant to state law in an amount in excess of $92,500; costs incurred and reasonable attorney fees.

c) any other relief as the Court deems appropriate.

## VI.  JURY DEMAND

Plaintiff demands a trial by jury for those triable issues under state law other than causes of action made under admiralty law for a bench trial.

**RESPECTFULLY SUBMITTED** this 26th day of May, 2020.

        By: */s/Michael C. Black*
        **Michael C. Black, Esquire**
        Florida Bar No. 056162
        mblack@marlaw.com
        **MICHAEL C. BLACK, P.A.**
        7700 North Kendall Drive, Suite 305
        Miami, Florida 33156
        Telephone: (305) 271-8301
        Facsimile: (305) 271-8302
        *Attorneys for Plaintiffs*